UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

ODSON LAGUERRE,

Petitioner,

v.

WARDEN, CENTRAL VALLEY ANNEX DETENION FACILITY,

Respondent.

Case No. 1:26-cv-05333-KES-CDB (HC)

FINDINGS AND RECOMMENDATIONS TO GRANT PETITION FOR WRIT OF HABEAS CORPUS (Doc. [1]) AND DENY MOTION FOR TEMPORARY RESTRAINING ORDER (Doc. [14]) AS MOOT

(A Number: A-244-573-782)

(Docs. 1, 14)

**7-Day Objection Period**

Petitioner Odson Laguerre ("Petitioner"), a federal immigration detainee proceeding pro se and *in forma pauperis*, initiated this action on July 10, 2026, with the filing of a petition for writ of habeas corpus under 28 U.S.C. § 2241, while in the custody of Immigration and Customs Enforcement ("ICE") at the Central Valley Annex facility located in McFarland, California. (Doc. 1). Respondent is the unnamed Warden, Central Valley Annex Detention Facility. *Id.*

**Background**

Petitioner is a citizen of Haiti who entered the United States from Mexico on June 9, 2024, at the Hidalgo, Texas port of entry without documents sufficient for lawful entry into the United States. (Doc. 7 at 26). On the same day, immigration officials issued Petitioner a Notice to Appear charging him as inadmissible under § 8 U.S.C 212(a)(7)(A)(i)(I) and granted him humanitarian

parole pursuant to § 1182(d)(5)(A) for 24 months. (Doc. 13 at 1-2 & Exhibit A).

On October 19, 2024, law enforcement in Broward County, Florida, arrested and charged Petitioner on a criminal complaint for sexual battery and sexual assault with a weapon. (Doc. 7 at 12-13 [Criminal History Report]; *id.* at 16 [Booking Report]; *id.* at 17-22 [Criminal Complaint Affidavit]). The following day, Petitioner was encountered by immigration officials while in local custody, and an immigration detainer was issued and later processed on October 21, 2024. *Id.* at 5 [I-213]. Although the report of immigration officials indicates that Petitioner "will be held in ICE custody pending removal proceedings" (*id*), it appears Petitioner remained in law enforcement custody pending his prosecution on the state criminal charges. *See* (Doc. 9 [Petitioner's Reply]) (stating "the state of Florida abuse me during 16 month incarceration for something I didn't do"). Specifically, on April 6, 2026, a *nolle prosequi* was entered by the assistant state attorney and signed by the presiding circuit court judge (Doc. 7 at 24 [Circuit Court Disposition Order]) and immigration officials executed their warrant for arrest and took Petitioner into their custody on the following day (*id.* at 31 [DHS Warrant for Arrest of Alien]).

On July 14, 2026, an immigration judge ordered Petitioner removed to Haiti. (Doc. 7 at 33-36 [Order of Immigration Judge]). The undersigned takes judicial notice that Petitioner has appealed the removal order and the appeal remains pending as of the date of these findings and recommendations.[1]

Petitioner challenges his continued detention under the Due Process Clause of the Fifth Amendment, arguing that immigration officials have failed to provide notice or an individualized assessment justifying his detention. *Id.* Respondent opposes the petition on grounds that Petitioner is an "applicant for admission" and subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) given that he was granted humanitarian parole. (Doc. 7 at 1-2) (distinguishing *Rodriguez Vasquez*

[1] *See* https://acis.eoir.justice.gov/en/caseInformation (last visited Oct. 13, 2026, using Petitioner's A-Number and nationality); *Daniels-Hall v. National Edu. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010) ("It is appropriate to take judicial notice of this information, as it was made publicly available by government entities ... and neither party disputes the authenticity of the web sites or the accuracy of the information displayed [ ] therein."); *Argueta v. Walgreens Co.*, 760 F. Supp. 3d 1028, 1034 (E.D. Cal. 2024) (taking judicial notice of information on federal government agency's website).

*v. Bostock*, 183 F.4th 1160 (9th Cir. 2026)). Respondent acknowledges that "this case is in the category of immigration habeas cases for which the Court has typically ordered a bond hearing" (*id.* at 1) and requests that, if the Court determines 8 U.S.C § 1226 governs Petitioner's detention, the Court afford 14 days within which to conduct a bond hearing.

On September 28, 2026, Petitioner filed a one-page form "Motion for Temporary Restraining Order." (Doc. 14).

**Discussion**

**A. Petitioner's Detention is Governed by 8 U.S.C. § 1225(b)**

Petitioner entered the United States and was granted humanitarian parole, which is available on a case-by-case basis "for urgent humanitarian reasons or significant public benefit" for noncitizens "applying for admission to the United States." 8 U.S.C. § 1182(d)(5)(A). Such parole "shall not be regarded as an admission" of the noncitizen, and once parole is terminated, the noncitizen is returned to the custody from which he was paroled. *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018).

Here, Petitioner's Notice to Appear, issued on the date of his arrival into the United States, reflects that he applied for admission to the United States and was determined by immigration authorities to be "an immigrant not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Immigration and Nationality Act." (Doc. 7, Exhibit E). Accordingly, Petitioner was first detained at the border under the government's § 1225(b) detention authority. *See Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1168 (9th Cir. 2026) (noting that an inadmissible noncitizen arriving in the United States without valid entry documents may be subject to expedited removal and, during such summary proceedings, is subject to mandatory detention pursuant to § 1225(b)). Under *Jennings*, once Petitioner's humanitarian parole is terminated, he returns to his preexisting custody status (*e.g.*, mandatory detention under § 1225(b)). *E.g.*, *Moldogaziev v. Cantu*, No. CV-25-03265-PHX-MTL, 2026 WL 2416789, at *2 (D. Ariz. Aug. 19, 2026) ("Because Petitioner entered the United States through humanitarian parole, it must be the case, then, that he was first detained at the border under the Government's § 1225(b) detention authority. And as is well established, an alien detained

pursuant to § 1225(b) is not entitled, at least as a statutory matter, to a bond hearing.”).

**B. Petitioner’s Humanitarian Parole Was Properly Terminated**

Humanitarian parole may be terminated in two ways. First, termination occurs automatically (i) upon the noncitizen’s departure from the United States or (ii) at the expiration of the time for which parole was authorized. 8 C.F.R. § 212.5(e)(1). No written notice is required. *Id.* Second, if parole is not terminated automatically, it may terminate if “the purpose for which parole was authorized” has been accomplished or a DHS official with authority decides that “neither humanitarian reasons nor public benefit warrants the continued presence of the [noncitizen] in the United States.” 8 C.F.R. § 212.5(e)(2)(i). “When a charging document is served on the alien, the charging document will constitute written notice of termination of parole.” *Id.*

Here, under § 212.5(e)(2)(i), Petitioner’s parole properly was terminated when service was made upon him of an arrest warrant on April 7, 2026, and he was placed into removal proceedings. (Doc. 7 at 31 [Arrest Warrant]). Although “charging document” is not defined by the INA’s regulations governing humanitarian parole, it is defined elsewhere in the Code of Federal Regulations as a “written instrument which initiates a proceeding before an Immigration Judge.” *See* 8 C.F.R. §§ 244.1, 1001.13. Although other courts have found that an arrest warrant does not constitute a “charging document” under the INA, they have relied in part on the fact that an arrest warrant is not included among the examples listed in § 244.1 of charging documents, such as a “Notice to Appear” and “Notice of Referral to Immigration Judge.” *E.g., Lamarre v. Bondi*, No. 2:26-cv-00584-ART-BNW, 2026 WL 1270516, at *4 (D. Nev. May 8, 2026) (finding that an immigration arrest warrant issued on the petitioner’s earlier-entered notice to appear when he was granted humanitarian parole does not constitute a “charging document” under § 212.5(e)(2)(i); reasoning that an arrest warrant is not listed in § 244.1 and that the notice to appear “was issued before the grant of parole and thus could not have terminated it.”). However, the regulation defines “charging document” as a written instrument that initiates immigration proceedings and identifies illustrative examples that do not purport to be exhaustive. *See, e.g., Northwest Assoc. of Indep. Schools v. Labrador*, 166 F.4th 1148, 1160 (9th Cir. 2026) (“When a definitional section says that a word ‘includes’ certain things, that is usually taken to mean that it may include other things as

well.") (quoting Antonin Scalia & Bryan A. Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 226 (2012)). Accordingly, the undersigned finds under the circumstances here that Petitioner's Notice to Appear, coupled with a later-executed arrest warrant, qualifies as a charging document sufficient to properly terminate Petitioner's humanitarian parole in light of the removal proceedings that indisputably followed, resulting ultimately in an immigration judge's issuance of a removal order.

As found above in Section A, following termination of Petitioner's parole, he was returned to the mandatory detention regime applicable upon his entry into the United States pursuant to § 1225(b). Courts have long recognized this status as the "entry fiction," which applies to "those apprehended at or very near a point of entry and then either paroled into the United States or detained in the United States pending a determination of their admissibility." *Padilla v. United States Immigr. & Customs Enf't*, -- F.4th --, No. 24-2801, 2026 WL 2822044, at *13 (9th Cir. Sept. 21, 2026) (quoting *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 215 (1953)). "Such individuals are 'treated as if stopped at the border' with respect to certain legal rights." *Id.* (citations omitted). As the Ninth Circuit recently recognized, in *Mezei*, the Supreme Court held that because such individuals "remain 'on the threshold of initial entry' despite their physical presence in the United States, their due process rights regarding admission are limited to '[w]hatever the procedure authorized by Congress is'" *Id.* (quoting *Mezei*, 245 U.S at 212); *see Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139 (2020).

"Even where parole is properly terminated, if a final order of removal 'cannot be executed within a reasonable time, the [noncitizen] shall again be released on parole unless in the opinion of [a proper DHS official] the public interest requires that the [noncitizen] be continued in custody.'" *Jose A.C. v. Warden of the California City Correctional Ctr.*, No. 2:26-cv-01339-TLN-CSK, 2026 WL 1076330, at *2 (E.D. Cal. Apr. 20, 2026) (quoting 8 C.F.R. § 212.5(e)(2)(i)). "Stated differently, unless detention is required for the timely removal of a noncitizen, continued detention following release on parole must be supported by individualized assessment by an authorized DHS official. Otherwise, implementing regulations require that a noncitizen be returned to humanitarian parole." *Id.* (quoting *Caisa Telenchana v. Hermosillo*, No. 2:26-cv-00363, 2026 WL 696806, at

*7 (W.D. Wash. Mar. 12, 2026).

Here, Petitioner has been in Respondent's custody since April 7, 2026, and he was ordered removed on July 14, 2026. Under § 212.5(e)(2)(i), Petitioner's order of removal "shall be executed" and if it cannot be executed "within a reasonable time," the government is required to release him on parole again. While Petitioner has been in immigration custody for approximately six months, his post-removal custody has lasted approximately three months. Although § 212.5(e)(2)(i) does not define a "reasonable time" for executing an order of removal, the Ninth Circuit has indicated that detention lasting less than six months in furtherance of anticipated removal does not violate due process. *See generally Rodriguez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022).

Accordingly, the undersigned finds that Respondent has not violated 8 C.F.R. § 212.5(e)(2)(i) as Petitioner properly remains detained pursuant to 8 U.S.C. § 1225(b) while Respondent seeks to execute his order of removal within a "reasonable time."

**C. The Government Violated Petitioner's Fifth Amendment Rights**

Respondent argues that Petitioner has no due process rights and that, instead, his rights are limited to those provided by the governing detention statute – 8 U.S.C. § 1225(b). (Doc. 7 at 2) (citing *Thuraissigiam*, 591 U.S. at 139 and *Mezei*, 345 U.S. at 212). But this argument stretches Supreme Court precedent too far.

In *Thuraissigiam*, a noncitizen brought a habeas challenge to an immigration judge's upholding of an asylum officer's negative credible fear finding. The Supreme Court held that the jurisdictional stripping provisions of the Immigration and Nationality Act barred habeas review of the petitioner's claim. Addressing whether the statutory preclusion of judicial review violated the petitioner's due process rights, the Supreme Court found that due process rights "regarding admission" of noncitizens subject to the entry fiction doctrine – such as Petitioner here due to his humanitarian parole status (*see supra*) – are limited to those authorized by statute. 591 U.S. at 140.

The petitioner in *Thuraissigiam* did not challenge detention; rather, he sought review of his deportation proceedings. And the court's holding was expressly limited to the petitioner's due process rights "regarding admission." As the Ninth Circuit recently observed, "*Thuraissigiam's* due process claim thus concerned *admission.* … Admission and detention occupy fundamentally

different positions in our legal order." *Padilla*, 2026 WL 2822044, at *16 (emphasis in original); *see id.* at *19 ("*Thuraissigiam* was an admission, not a detention, case.").

Given the Ninth Circuit's acknowledgement of the limited applicability of *Thuraissigiam's* holding to cases involving admission, the undersigned finds that *Thuraissigiam* does not foreclose a noncitizen's as-applied constitutional challenge to his detention under § 1225(b). Indeed, the Supreme Court and lower courts have recognized that a noncitizen may challenge his immigration detention mandated by statute as violative of due process – including where the petitioner was granted humanitarian parole. *E.g., Nielson v. Preap*, 586 U.S. 392, 420 (2019) (finding that § 1226(c)'s provision for mandatory detention "does not foreclose as-applied challenges—that is, constitutional challenges to applications of the statute."); *Omer G. G. v. Kaiser*, 815 F. Supp. 3d 1098, 1106 (E.D. Cal. 2025) (finding that *Thuraissigiam* does not bar a habeas petitioner from asserting that his detention pursuant § 1225(b) violates his protected liberty interest under the Due Process Clause due to his release on parole); *Doe v. Andrews*, No. 1:25-cv-00333-JLT-HBK (HC), 2026 WL 797694, at *9 (E.D. Cal. Mar. 23, 2026) ("the Court finds that the holding in *Thuraissigiam* does not foreclose Petitioner's due process claim which merely seeks a chance to apply for release on bond pending resolution of his bona fide asylum claim that remains to be resolved in standard removal proceedings."); *Torres v. Hermosillo*, No. 2:25-cv-02687-LK, 2026 WL 145715, at *4 (W.D. Wash. Jan. 20, 2026) (same).

In short, under the authorities cited above, Petitioner's liberty interest in being free from detention is not extinguished by the government's termination of his parole. That liberty interest is underscored by the fact that the government, in granting Petitioner humanitarian parole, found that he "present[ed] neither a security risk nor a risk of absconding." *See* 8 C.F.R. § 212.5(b); *Gasparyan v. Blanche*, No. 2:26-cv-05139-AYP, 2026 WL 2456687, at *5 (C.D. Cal. July 27, 2026) (citing cases); *see also Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017) (concluding that noncitizen detainees deemed neither a flight risk nor dangerous have a protectible liberty interest under the Due Process Clause to be free from custody). Moreover, for the reasons set forth above, the fact that Petitioner's detention is mandatory under § 1225(b) does not displace his due process rights. "In the immigration context specifically, rights against arbitrary detention have

been frequently vindicated through the Due Process Clause, in recognition that '[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects.'" *Padilla*, 2026 WL 2822044, at *19 (quoting *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001)).

**D. Petitioner is Entitled To a Bond Hearing Where the Government Must Establish a Basis to Detain Petitioner by Clear and Convincing Evidence**

Because Petitioner has shown he has a protected liberty interest to remain free from re-detention based on his grant by the government of humanitarian parole, the undersigned must determine what process is due before the government may terminate that liberty interest. Due process "is a flexible concept that varies with the particular situation." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). The procedural protections required in a given situation are evaluated using the *Mathews v. Eldridge* factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)); *see Hernandez*, 872 F.3d at 993.

Turning to the first factor, Petitioner has a significant private interest in remaining free from detention. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Petitioner arrived in the United States on June 9, 2024, and was granted a two-year term of humanitarian parole, which necessarily required a finding by the government that his entrance into the country either was warranted due to an urgent humanitarian reason or served a significant public benefit. Although he remained free from custody only for approximately four months prior to his arrest and charge by state authorities with criminal offenses, he remained in pretrial custody for approximately 16 months. The prosecuting authorities dismissed Petitioner's criminal charges while his humanitarian parole remained in effect. Under these circumstances, the

first *Mathews* factor weighs in Petitioner's favor.

Second, "the risk of an erroneous deprivation [of liberty] is high" where, as here, "[the petitioner] has not received any bond or custody redetermination hearing." *A.E. v. Andrews*, No. 1:25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is justified when a noncitizen presents a risk of flight or danger to the community. *See Zadvydas*, 533 U.S. at 690. "Since the purpose of detention under § 1225(b) is to prevent flight, the fact that Petitioner was previously granted humanitarian parole suggests a high risk that Petitioner is being erroneously deprived of his liberty" when he is not subject to procedural safeguards prior to re-detention. *Osorio v. Frink*, No. 4:26-cv-07711, 2026 WL 2913059, at *4 (S.D. Tex. Sept. 28, 2026). Petitioner's arrest on criminal charges – albeit based on serious allegations of dangerous conduct – did not result in a conviction, but instead, a determination by the prosecuting authority to dismiss the case in the interests of justice. That arrest standing by itself does not necessarily support a finding that Petitioner is an unmitigable risk of flight or danger sufficient to permit re-detention without challenge: "[i]n fact, it underscores the importance of providing Petitioner notice and a meaningful opportunity to be heard before depriving him of the liberty interest." *Gasparyan*, 2026 WL 2456687, at *7. Thus, this factor weighs in Petitioner's favor.

Third, although the government has a strong interest in enforcing the immigration laws, the government's interest in detaining Petitioner without a hearing is "low." *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025) (citing *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019)). That is particularly true in immigration court where custody hearings are routine and impose a "minimal" cost. *Omer G. G.*, 815 F. Supp. 3d at 1111 (quoting Doe, 787 F. Supp. 3d at 1094–95).

Having found that the *Mathews* factors all weigh in Petitioner's favor, the undersigned considers whether Petitioner is entitled to a pre-deprivation or post-deprivation bond hearing, and further, addresses what standards should apply at that hearing.

First, the undersigned concludes that Petitioner is entitled only to a post-deprivation bond hearing. *E.g., Omer G. G.*, 815 F. Supp. 3d at 1111-12 (finding a petitioner whose humanitarian

parole was properly terminated was entitled to a post-deprivation bond hearing under *Mathews*). As summarized above, Petitioner was arrested and charged with a serious crime. Although the arrest did not result in a criminal conviction, given that ICE contacted Petitioner immediately upon his arrest and timely lodged an immigration detainer to facilitate its obtaining custody over him upon conclusion of the criminal case, ICE's reliance upon the arrest and criminal charge was "not obviously pretex[t]ual." *Martinez Hernandez v. Andrews*, No. 1:25-cv-01035-JLT-HBK, 2025 WL 2495767, at *12 (E.D. Cal. Aug. 28, 2025) ("If Respondent's view of the facts is correct, it is at least arguable that providing Petitioner with notice and a pre-deprivation hearing would have been impracticable and/or would have motivated his flight.") (citing cases); accord *O.A.C.C. v. Wofford*, No. 1:25-cv-01652-DAD-CSK (HC), 2025 WL 3485221, at *4-5 (E.D. Cal. Dec. 4, 2025). *Cf. Peraza v Mullin*, No. 1:26-cv-06230-JLT-EPG, 2026 WL 2905865, at * 1 (E.D. Cal. Sept. 28, 2026) ("As Petitioner has committed no crime nor violated the conditions of his [humanitarian] parole, the Court find[s] the appropriate remedy in this case to be immediate release."); *Castellano v. Blanche*, No. 2:26-cv-00124-GMN-BNW, 2026 WL 1414049, at *9 (D. Nev. May 20, 2026) (finding that a petitioner whose humanitarian parole was improperly terminated was entitled to immediate release; reasoning, "[w]hile a post-deprivation hearing may be appropriate in situations that urgently require arrest, absent evidence of such urgent concerns, a pre-deprivation hearing is required to satisfy due process.").

Second, as summarized above, in granting Petitioner humanitarian parole, immigration officials necessarily determined that he did not present a risk of flight or danger to the community. *See* 8 C.F.R. § 212.5(b). Nevertheless, Petitioner has not been afforded a bond hearing before an immigration judge. Under these circumstances, even in the light of disputed issues of fact concerning the nature and severity of Petitioner's alleged criminal conduct, the undersigned will recommend the Court find that the government should bear the burden of establishing at the bond hearing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight. *E.g., Omer G. G.*, 815 F. Supp. 3d at 1112 (summarizing Ninth Circuit precedent that the government bears the burden of proof where immigration detention is mandated by statute); *Singh v. Andrews*, No. 1:25-cv-01543-DCJ-SCR, 2025 WL 3248059, at *6 (E.D. Cal. Nov. 19,

2025) (requiring government to carry burden by clear and convincing evidence, notwithstanding disputed issues of facts involving the petitioner's alleged violation of release conditions). "Doing so is logical" because "the immigrant's initial release reflected a determination by the government that the noncitizen is not a danger to the community or a flight risk. Since it is the government that initiated re-detention, it follows that the government should be required to bear the burden of providing a justification for the re-detention." *M.R.R. v. Chestnut*, No. 1:25-cv-01517-JLT-SKO, 2025 WL 3265446, at *14 (E.D. Cal. Nov. 24, 2025) (relying on *Pinchi v. Noem*, 792 F. Supp. 3d 1025, at 1034, 1038 (N.D. Cal. 2025)).

Considering the findings and recommendation to grant Petitioner the relief noted herein, the undersigned will recommend the Court deny granting Petitioner's motion for a temporary restraining order (Doc. 14) as moot.

**Conclusion and Recommendation**

Accordingly, IT IS HEREBY RECOMMENDED that:

1. The petition for writ of habeas corpus (Doc. 1) be GRANTED.
2. Petitioner's motion for temporary restraining order (Doc. 14) be DENIED as moot.
3. Respondents be ORDERED to provide Petitioner with a bond hearing before a neutral decisionmaker within seven days of the date of this Order.
4. Respondents be FURTHER ORDERED to (1) immediately provide Petitioner with a copy of this Order and provide him with 72 hours' written notice before the bond hearing in a language that he can understand; (2) at the bond hearing, Respondent bear the burden to demonstrate that Petitioner is a flight risk or danger to the community by clear and convincing evidence; (3) Petitioner be permitted to be represented by an attorney at this hearing, and Respondent may extend the deadline at Petitioner's request so that he can obtain an attorney; (4) if Petitioner obtains an attorney, his attorney shall also be given 72 hours' written notice before the bond hearing; (5) the neutral decisionmaker must consider Petitioner's financial circumstances in setting the amount of bond and alternative conditions of release in lieu of detention without bond; and (6) if Respondent does not provide Petitioner with a bond hearing within seven days, then

Respondent must release him.

5. The Clerk of the Court be DIRECTED to enter judgment in favor of Petitioner and close this case.

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). **Within seven (7) days** after being served with these findings and recommendations, the parties may file written objections with the Court. Although this objection period is shorter than provided by Local Rule, such an adjustment is warranted given the nature of Petitioner's harm, the finding of a violation of the U.S. Constitution by Respondent, and the fact that the parties have extensively briefed the issues involved. *See United States v. Barney*, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) ("The court may require a response within a shorter period if exigencies of the calendar require."). The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and **shall not exceed 15 pages** without leave of Court and good cause shown. The Court will not consider exhibits attached to the Objections, but a party may refer to exhibits in the record by CM/ECF document and page number. Any pages filed in excess of the 15-page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C).

A party's failure to file any objections within the specified time may result in the waiver of certain rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated: **October 13, 2026**

UNITED STATES MAGISTRATE JUDGE